The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. The employer is self-insured, with Integrated Health Care Services as the servicing agent.
3. The defendant-employer regularly employs three (3) or more employees and is bound by the North Carolina Workers' Compensation Act.
4. At all times relevant hereto, an employer-employee relationship existed between the plaintiff and the defendant-employer.
5. The date of the alleged injury is August 15, 1996.
6. Pursuant to the approved Form 21, the parties stipulate that the employee's average weekly wage is $532.00, with a compensation rate of $354.69.
7. Defendant paid compensation to plaintiff for temporary total disability from August 26, 1996 through January 27, 1997.
8. In addition, the parties stipulated into evidence Exhibits 1-10 which were attached to the pretrial agreement.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff is thirty-five years old and is a high school graduate. She has had two semesters of college, two semesters of business school and computer training since graduating from high school. Plaintiff also has a Class A drivers license.
2. In June 1995 plaintiff began working for defendant as a truck driver. Plaintiff's job involved connecting the assigned tractor and trailer, performing a safety inspection, driving the truck on a specified route to various grocery stores and assisting with the unloading of the truck at the store. The trailer would be loaded when plaintiff reported for work and, at the times in question, the goods loaded onto the trailer would be palletized with a shrink-wrap covering. Each store had a pallet jack to unload the truck, and employees from the store were assigned to unload that store's merchandise from the truck. Plaintiff was also responsible for moving the pallets of goods off the truck.
3. On August 15, 1996 plaintiff sustained a compensable injury by accident when she pulled on the door to the trailer in order to open it and felt a pulling sensation in her back. After initial treatment at the emergency room and at Rapid Response, plaintiff was referred to Dr. Lee Whitehurst, an orthopedic surgeon. Dr. Whitehurst examined plaintiff on September 5, 1996. At that time plaintiff was complaining of pain in her mid and low back and down her right leg. Plaintiff insisted that she needed an MRI, so the test was ordered. The MRI revealed a protrusion at L3-4. Dr. Whitehurst did not think that plaintiff's findings warranted surgery, but he referred plaintiff to Dr. William Lestini, another orthopedic surgeon in his office, for a second opinion.
4. Dr. Lestini evaluated plaintiff on October 1, 1996. Plaintiff had significant non-organic findings on examination, and Dr. Lestini found it difficult to explain all of her symptoms with the findings on the MRI. Consequently, Dr. Lestini did not recommend surgery, but advised plaintiff to undergo some nerve root blocks. Plaintiff returned on October 16, 1996 intending to schedule surgery, but Dr. Lestini still did not consider her to be a good surgical candidate. He ordered diagnostic tests to see if there was objective evidence of nerve root irritation. Nerve testing proved to be normal. Plaintiff then wanted to undergo a discogram which was performed on November 21, 1996. The discs looked normal on examination during the discogram, and plaintiff's responses were so inconsistent that there was a total miscorrelation between her responses and the injections. Although she reported symptoms of pain at three levels with injections, she also reported increased pain with sham injections and on some occasions even when no injections were made and reported relief from pain with actual injections.
5. Dr. Lestini concluded that plaintiff's back was structurally intact, that she was not experiencing symptoms from the L3-4 disc and that plaintiff was capable of returning to work in her regular job. Consequently, on December 5, 1996 Dr. Lestini indicated by letter that plaintiff had reached maximum medical improvement and could return to work with no restrictions. Dr. Lestini found no evidence of any permanent partial disability.
6. Defendant admitted liability for plaintiff's August 15, 1996 injury pursuant to a Form 21 agreement approved by the Industrial Commission and paid plaintiff temporary total disability during her time out of work. After plaintiff was released by her doctor on December 17, 1996 Kent Barefoot, plaintiff's supervisor, wrote plaintiff advising that she would be back on the work schedule effective December 24, 1996. Plaintiff did not report for work on that date nor did she contact her employer.
7. On January 23, 1997 plaintiff went to Dr. Craig Derian, an orthopedic surgeon in Durham, North Carolina for another opinion. She complained of persistent low back pain with a sense of weakness in her right leg but no true pain. Although Dr. Derian believed that plaintiff exhibited mild symptoms from degenerative disc disease with a small disc rupture at L3-4, there was no evidence of significant nerve root compression so he did not recommend surgery, further testing or treatment. He advised plaintiff to continue walking, exercising and changing positions frequently. In Dr. Derian's opinion, plaintiff was able to do her regular job, but he recommended that plaintiff have assistance unloading the trucks. He also indicated that plaintiff should limit herself to over-the-counter pain medication as much as possible. Dr. Derian gave plaintiff a 5% permanent partial disability rating.
8. Plaintiff returned to Dr. Lestini on February 6, 1997. He reviewed the findings from her discogram and concluded that basically plaintiff's spine was structurally intact and that she was neurologically intact. Dr. Lestini again released plaintiff to return to work without restrictions and advised her that she could see her medical doctor to see if another problem besides her back injury was causing some of her problems or for medication if her symptoms worsened.
9. There is insufficient evidence in the record to determine whether plaintiff returned to work for defendant as a truck driver, but there is evidence in the record to suggest that plaintiff returned to light duty work on January 27, 1997. She had undergone surgery in January 1997 for a condition unrelated to her back injury. Despite being released by Drs. Lestini and Derian to return to work as a truck driver, plaintiff claimed that she was unable to perform those job duties. Plaintiff was capable of returning to work as scheduled on December 24, 1996, but unjustifiably refused suitable work.
10. After being released by Dr. Lestini, plaintiff went to Dr. Bernard Bennett, her family physician, who saw her on March 7 and March 17, 1997. He treated her with physical therapy and medication, and then referred her to Dr. Frederick Benedict, an orthopedic surgeon. Defendant would not authorize treatment with Dr. Benedict, and plaintiff was notified of the refused authorization for medical treatment with Dr. Benedict. Plaintiff nevertheless went to Dr. Benedict on March 25, 1997. He recommended continued physical therapy and weight loss. Dr. Benedict did not believe that it was likely that plaintiff would return to work as a truck driver; consequently, he suggested a consultation with the Department of Vocational Rehabilitation for assistance. On April 25, 1997 and on June 11, 1997, Dr. Benedict saw plaintiff in follow-up and continued to restrict her to light duty work. On both occasions, plaintiff was released from his care unless needed.
11. On February 5, 1998 plaintiff returned to Dr. Lestini for another evaluation. Plaintiff was still complaining of back and leg pain. Her examination was essentially unchanged from the previous year. Plaintiff wanted Dr. Lestini to order an epidural steroid injection. Dr. Lestini did not believe it would help her, but he indicated that he would not withhold the treatment from her. He advised her that she should be as functional as possible, and he had nothing else to offer her by way of treatment.
12. Plaintiff ultimately returned to work for a different employer in May 1998.
13. Plaintiff reached maximum medical improvement with respect to the injury in question by February 7, 1997. Plaintiff sustained a 2.5 percent permanent partial disability to her back as a result of her injury at work. As of the date of hearing before the Deputy Commissioner, plaintiff had not sustained a material change or worsening of her condition, and plaintiff remained capable of performing her regular job as a truck driver for defendant since December 24, 1996.
14. On January 27, 1997, defendant unilaterally stopped plaintiff's disability benefits without filing a Form 24, having a hearing or receiving permission from the Industrial Commission to suspend plaintiff's benefits.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, plaintiff was entitled to receive compensation for temporary total disability through December 23, 1996. However, as of December 24, 1996 plaintiff was not entitled to receive compensation in that she was capable of returning to work. Defendant offered plaintiff her pre-injury position and wages, but plaintiff unjustifiably refused to return to work and is not entitled to any compensation during the continuation of such refusal. Consequently, defendant has overpaid compensation to her and is entitled to a credit. N.C. Gen. Stat. §§ 97-29, 97-32 and 97-42.
2. Plaintiff is entitled to compensation for permanent partial disability at the rate of $354.69 per week for 7.5 weeks for the 2.5 percent permanent partial disability she sustained to her back as a result of this injury. N.C. Gen. Stat. § 97-31(23).
3. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident, but she is not entitled to have defendant provide payment for the unauthorized treatment rendered by Dr. Benedict. Prior to her treatment with Dr. Benedict, plaintiff had been evaluated by a physician of her choice; therefore, Dr. Benedict's treatment is not approved. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Defendant shall pay $500.00 as sanctions for failing to follow proper Industrial Commission procedures in suspending plaintiff's disability benefits. N.C. Gen. Stat. § 97-18.1; N.C. Workers' Compensation Rules 404 and 802.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff for permanent partial disability at the rate of $354.69 per week for 7.5 weeks, but subject to a credit in favor of defendant for the overpayment of compensation for temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident but excluding those arising from the unauthorized treatment by Dr. Benedict.
3. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is approved and shall be paid directly to plaintiff's counsel.
4. Defendant shall pay plaintiff an additional sum of $500.00 as sanctions.
5. Defendant shall pay the costs.
This the ___ day of July 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/jth